2026 IL App (1st) 241575-U

No. 1-24-1575

Order filed August 12, 2026

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 3035 |
| | ) | |
| DAVID SEDDON, | ) | Honorable |
| | ) | Anjana Hansen, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Martin and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's denial of postconviction relief following a third-stage evidentiary hearing when the court's finding that the testimony of defendant and his brother was incredible was not against the manifest weight of the evidence.

¶ 2    Defendant David Seddon appeals from the circuit court's denial of relief following an

evidentiary hearing pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*.

(West 2012)). On appeal, he contends that he established, by a preponderance of the evidence, that

(1) his jury waiver was unknowing and (2) he was denied effective assistance when trial counsel

advised defendant to elect a bench trial based on defendant's inability to pay counsel "additional money" for a jury trial. We affirm.[1]

¶ 3                              I. BACKGROUND

¶ 4     We include only those facts necessary for an understanding of the issues before us.

¶ 5     Following a bench trial, defendant was found guilty of first degree murder and sentenced to 25 years in prison. We affirmed on direct appeal. *People v. Seddon*, 2012 IL App (1st) 110091-U. Defendant then filed a *pro se* postconviction petition alleging, relevant here, that he was denied effective assistance when trial counsel advised defendant to elect a bench trial due to defendant's unpaid legal fees. The circuit court summarily dismissed the petition. On appeal, we reversed and remanded for further proceedings. See *People v. Seddon*, 2016 IL App (1st) 140319-U. On remand, the matter advanced to an evidentiary hearing on defendant's claims that (1) his jury waiver was unknowing, (2) he was denied conflict-free counsel, and (3) he was denied effective assistance when counsel's advice that defendant elect a bench trial reflected counsel's best interest. Following an evidentiary hearing, the court denied defendant postconviction relief.

¶ 6                            A. Trial Proceedings

¶ 7     Prior to trial, the court admonished defendant that he was entitled to a jury or bench trial and asked if he understood the difference. Defendant affirmed. The court then asked whether defendant signed a jury waiver, and defendant answered yes. Next, the court asked whether defendant understood that the jury waiver indicated that defendant wanted a bench trial and that the decision was defendant's "decision alone." Defendant answered yes to each question. The court

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

then asked defendant whether (1) he discussed this issue with trial counsel, (2) trial counsel advised him on "the best way to proceed," and (3) he made a decision. Defendant answered yes to each question and stated that he "would prefer" a bench trial. Upon further questioning by the trial court, defendant denied that anyone forced, threatened, or promised him something to waive a jury trial. The court accepted defendant's jury waiver.

¶ 8    The evidence at trial established that defendant and the victim Alan Lauritzen were truck drivers. On January 15, 2010, the men argued over CB radio, stopped on the side of the road, and fought. Defendant stabbed Lauritzen, who later died. Defendant then drove away, did not contact the police, and disposed of the knife. Defendant testified that he acted in self-defense because he feared for his life after Lauritzen struck defendant's face. The trial court found defendant guilty of first degree murder and imposed a sentence of 25 years in prison. We affirmed on direct appeal. See *Seddon*, 2012 IL App (1st) 110091-U.

¶ 9                                B. Postconviction Proceedings

¶ 10    On June 28, 2013, defendant's *pro se* postconviction petition was filed in the circuit court. Relevant here, the petition alleged that defendant's brother James Seddon (James) hired trial counsel and, without defendant's knowledge, fell behind on paying legal fees. Consequently, counsel "would not represent [defendant] in a jury trial." The petition further alleged that, although defendant wanted a jury trial, he "succumbed" to counsel's "pressure." Defendant did not "discover" why trial counsel "coerced" him into a bench trial until James related, during a prison visit, that counsel refused to represent defendant at a jury trial "based upon the amount of funds currently paid."

¶ 11    In an attached affidavit, dated May 13, 2013, James averred that he engaged trial counsel to represent defendant and fell behind on payments. Counsel informed James that without payment of the "remaining balance due," counsel was "unwilling" to represent defendant at a jury trial. James further averred that defendant, who could not pay counsel but wanted a jury trial, was persuaded by counsel to elect a bench trial.

¶ 12    On September 19, 2013, the circuit court summarily dismissed the petition as frivolous and patently without merit. On appeal, we reversed and remanded for further proceedings. See *Seddon*, 2016 IL App (1st) 140319-U.

¶ 13    On remand, postconviction counsel filed a supplemental petition alleging, *inter alia*, that defendant's jury waiver was not knowing and voluntary because defendant believed that trial counsel advised defendant to elect a bench trial in defendant's own best interest rather than due to nonpayment of fees. For the same reason, defendant was denied his right to conflict-free counsel. The supplemental petition further alleged that defendant was denied effective assistance when counsel (1) advised defendant to proceed by bench trial because it was in counsel's best interest, (2) did not subpoena the log books from the victim's truck, and (3) did not present expert testimony to support defendant's self-defense claim.

¶ 14    Attached were, relevant here, James's 2013 affidavit and defendant's 2020 affidavit. Defendant averred, *inter alia*, he would have elected a jury trial had he realized that counsel's advice was not "solely" based on defendant's best interest.

¶ 15    The State sought to dismiss some claims but conceded that defendant's allegation regarding his jury waiver "might merit" an evidentiary hearing. The circuit court advanced defendant's claims that (1) he did not knowingly waive his right to a jury trial, (2) he was denied conflict-free

counsel, and (3) he was denied effective assistance when trial counsel's advice that he elect a bench trial was in counsel's best interest.

¶ 16    Defendant, James, and trial counsel testified at the June 24, 2024, evidentiary hearing.

¶ 17    The defense presented James, who testified that he hired trial counsel to represent defendant in January 2010. During a phone call, trial counsel agreed to a $15,000 fee. There was no written agreement. Counsel recommended a jury trial. James paid $7,000 by check to trial counsel in person and paid the remaining $8,000 in monthly installments. Although James requested receipts, he never received one. James believed that the $15,000 fee included a jury trial. However, "close to trial," in November 2010, trial counsel requested an additional $4,500 and suggested that James sell defendant's motorcycle. Counsel did not explain why he wanted additional funds. When James advised that he did not have the $4,500, counsel stated that "he could not go to a jury trial for that kind of money."

¶ 18    On cross-examination, James testified that, during his first phone conversation with trial counsel, counsel agreed to represent defendant for $15,000, discussed the strengths of defendant's case, and told James that defendant should elect a jury trial. James next testified that "[b]efore he agreed to it, he went to the *** jail" to visit defendant.

¶ 19    James then clarified that trial counsel agreed to represent defendant and opined about a jury trial in different conversations. The first conversation occurred in January 2010, and the second occurred on the "very next day." During the second conversation, a fee was agreed upon. Each time James made a payment, counsel stated that he did not have a receipt book. James did not receive a written engagement letter and did not request a written fee agreement.

¶ 20    James did not remember whether trial counsel told him in person or by telephone that counsel required an additional $4,500 for a jury trial. However, the conversation occurred a week before trial and counsel stated that he "would have [defendant] home by Christmas" if James provided the additional $4,500. James next testified that trial counsel suggested selling defendant's motorcycle, and then later stated that he wanted an additional $4,500. James was never present for discussions between defendant and trial counsel.

¶ 21    The State then showed James the 2013 affidavit. James agreed that it bore his signature but did not remember signing it. James acknowledged that the affidavit asserted that he fell behind on payments to trial counsel. However, at the hearing, James denied falling behind on payments. After reading the 2013 affidavit at the hearing, James testified that it did not make "sense" because trial counsel "got all of that money." James did not know who wrote the affidavit. Although James signed the affidavit and believed that he read it, that did not mean that he "understood" it. James denied signing a blank affidavit; rather, "[s]omebody probably wrote it" and he signed it. He did not remember who gave him the affidavit and acknowledged that it did not mention counsel's request for an additional $4,500 or counsel's statement that defendant would be home by Christmas.

¶ 22    Defendant testified that, during his first conversation with trial counsel, counsel had defendant sign a "power of attorney" so that James could sell defendant's vehicles. Defendant met with counsel three to four times prior to trial. When trial was approaching, counsel "laid it out" that defendant could proceed by bench or jury trial and explained a bench trial. Counsel stated that defendant might "get 60 years" following a jury trial but might receive probation after a bench trial. Counsel was unsure whether defendant would be found guilty of first degree murder and

opined that defendant "maybe" would be found guilty of second degree murder. At that point, defendant was "leaning more" toward a jury trial.

¶ 23    During a meeting "right before trial," trial counsel provided a jury waiver for defendant's signature and stated that counsel could not "go to a jury trial for what [James] still owes." Trial counsel did not state an amount and defendant did not ask. Defendant assumed that the outstanding balance was part of the initial payment and did not think that trial counsel would proceed to a jury trial without payment. This conversation impacted defendant's decision on how to proceed. He signed the jury waiver because trial counsel, "the professional," was hired "to make decisions." When the trial court later admonished defendant that it was his decision how to proceed, he believed that trial counsel was "making the professional decisions" and agreed to counsel's decision so that there would be "no conflict" between them.

¶ 24    Later, when drafting his *pro se* postconviction petition, defendant told James what trial counsel said about payment, and James stated that counsel told him "the same thing." Defendant drafted James's affidavit "based" on the conversation where trial counsel told defendant that James had "fallen behind on payments." During conversations with James, James stated that trial counsel lied about nonpayment and that James had in fact paid counsel.

¶ 25    During cross-examination, defendant testified that when he met with trial counsel at the jail on January 19, 2010, they discussed the case, but not the types of trials. Defendant did not believe that they discussed trial options at the jail. Defendant met with trial counsel face-to-face 4 to 5 times at the jail and they spoke on the phone about 10 times. Defendant then testified that trial counsel gave him "the options" in October, several weeks before trial. The trial began on November 16, 2010, and they discussed trial options "right before." The conversation occurred at

the courthouse the day trial started. The first day of trial was the first time that trial counsel stated that he could not "go to a bench trial for what he was owed." (Although the transcript states that defendant testified that trial counsel stated he could not "go to a bench trial for what he was owed," based on context, we believe that defendant misspoke, and he meant jury trial.)

¶ 26 Defendant testified that, although counsel explained the two types of trial, defendant did not remember whether counsel stated that the choice was defendant's. Defendant did not think that counsel told him what would happen when defendant appeared before the trial court to state whether defendant elected a jury trial or a bench trial, and counsel did not tell him how to respond when questioned by the court. Defendant then testified that at the "last court hearing" before trial, counsel "set it up for a bench trial." Until then, defendant thought that he would have a jury trial. He did not question counsel's decision or tell counsel that he wanted a jury trial.

¶ 27 Defendant acknowledged that his 2020 affidavit did not assert that trial counsel stated that counsel could not proceed to a jury trial due to the amount James owed, and that neither money nor a fee dispute were mentioned in the affidavit. Defendant then clarified that trial counsel never told defendant how much James owed.

¶ 28 During redirect examination, defendant testified that the *pro se* postconviction petition included the information about money.

¶ 29 During recross examination, defendant acknowledged sending trial counsel a letter in 2012, but denied requesting an affidavit.

¶ 30 The State then showed defendant the November 7, 2012, letter and asked whether the letter "respectfully" asked counsel to provide "an affidavit acknowledging that [counsel] may have been ineffective." Defendant answered yes and acknowledged that counsel declined. The State further

noted that, in the letter, defendant discussed why counsel may have been ineffective. The State asked whether the letter "mention[ed]" anything about "outstanding money owed," counsel's request for an additional $4,500, or counsel stating that counsel would not proceed to a jury trial "because of what [James] owed." Defendant acknowledged that the letter did not include these allegations. Defendant also acknowledged that the letter did not state that he believed the trial result would have been different had counsel not stated that counsel would not proceed to a jury trial due to "outstanding money."

¶ 31    During further redirect, defendant testified that he believed that a conversation in which James asserted that trial counsel lied about nonpayment occurred after defendant sent the letter. During further recross examination, defendant testified that James "always" told defendant that counsel's fees were paid.

¶ 32    The State presented trial counsel, who testified that he had been licensed to practice law in Illinois since 1996, and tried his "37th first degree murder jury" in May 2024. He had litigated "probably" 10 first degree murder bench trials in his career. In 2010, when trial counsel was retained to represent defendant, he had represented 15 to 20 first degree murder defendants at jury trials.

¶ 33    Trial counsel testified that James called him about representing defendant and they reached an agreement. Counsel could not locate the fee agreement and did not recall the fee in this case but recalled that James was "very good about the payments." Counsel did not remember whether this case had a different fee structure for a bench trial versus a jury trial. Prior to trial, counsel had "many, many meetings" with defendant. Counsel discussed the trial options with defendant and defendant chose a bench trial.

¶ 34 Trial counsel remembered a meeting where, after he and defendant watched defendant's videotaped statement, defendant said it did not "look good." They then discussed whether "a judge could be less forgiving about him lying to the police versus a jury." At that point, defendant stated that he thought they should proceed to a bench trial, and counsel agreed. Counsel explained that the case had "fatal flaws" because defendant left the scene, threw the "murder weapon" in a landfill, and never called the police. Additionally, defendant gave a "ridiculous statement" where he initially told police that the victim had a knife which defendant kicked out of the victim's hand but then set up "self-defense" by stating that the victim, who was younger and stronger, beat defendant, so defendant "popped his knife out and stabbed the guy." Counsel opined that, after watching the videotaped statement, "a jury just wasn't going to forgive" defendant. However, a trial court "would give him a little bit of a safe harbor on the things he did afterward" and "focus" on self-defense. Defendant agreed and decided on a bench trial. At trial, counsel argued self-defense and second degree murder. Counsel opined that the trial court "got it wrong."

¶ 35 Trial counsel acknowledged that he sometimes charged a higher fee for a jury trial based on a case's complexity. Counsel denied that nonpayment of fees resulted in him refusing to proceed to a jury trial, and "[a]bsolutely" conducted jury trials when fees were outstanding.

¶ 36 Counsel denied telling defendant that counsel could not proceed to a jury trial due to nonpayment of fees or telling James that an additional $4,500 was needed for a jury trial. Prior to defendant executing the jury waiver, counsel and defendant discussed whether to proceed by a bench or jury trial. Defendant requested a bench trial. Trial counsel denied that fees or payment affected his representation of defendant. He denied stating that defendant would be home by Christmas if counsel were paid an additional $4,500 for a jury trial.

¶ 37   During cross-examination, counsel testified that he remembered James making payments and was "sure" that he gave James receipts. He did not remember discussing payment with defendant and did not remember payment being a "problem." He did not remember obtaining a power of attorney from defendant so that James could sell defendant's vehicles. Counsel met with defendant to prepare him for trial, and they "probably" discussed trial options after receiving discovery. Counsel would never say, "you should take a bench"; rather, he would explain the problems with each kind of trial and ask what a client thought. Counsel denied discussing payment when defendant signed the jury waiver.

¶ 38   On July 24, 2024, the circuit court denied defendant postconviction relief. The court first noted that the trial court reviewed the jury waiver with defendant and asked whether defendant understood the difference between a jury and a bench trial, and that defendant indicated that he did. Defendant also indicated that (1) he understood that decision to proceed by bench or jury rested with him, (2) he had discussed the issue with trial counsel, and (3) trial counsel advised him as to the best way to proceed. Moreover, defendant stated that he wanted to proceed *via* a bench trial and denied that he was threatened or promised anything to waive his right to a jury. The court further noted that, in the affidavit attached to defendant's supplemental postconviction petition, defendant did not indicate that he was coerced into a bench trial due to nonpayment of fees. Thus, the court found that defendant's jury waiver was voluntarily and knowingly made.

¶ 39   The court further determined that the testimony that trial counsel wanted more money for a jury trial was incredible. It was "clear" to the court that James did not read his affidavit prior to signing it and that James was "at times" "surprised" as to its contents. Further, James's testimony "begged the question" of why an attorney would discuss privileged information with a defendant's

- 11 -

brother. The court did not believe that counsel would discuss whether to proceed to a bench or jury trial with James, who was "just writing the checks."

¶ 40 The court noted that defendant testified inconsistently as to when he and trial counsel discussed trial options. The court found defendant's testimony that he "went along" with trial counsel's advice to elect a bench trial because defendant hired counsel to make decisions and did not know what a bench trial meant conflicted with the transcripts of the admonishments and portions of defendant's testimony at the hearing. Moreover, defendant's letter to trial counsel did not mention fees. The court therefore found that defendant was not denied conflict-free counsel.

¶ 41                                   II. ANALYSIS

¶ 42 On appeal, defendant contends that his jury waiver was unknowing, and he was denied effective assistance because trial counsel's advice to elect a bench trial was based upon defendant's failure to pay counsel "additional money" for a jury trial.

¶ 43 The Act provides a three-stage process by which a criminal defendant can assert that his conviction resulted from a substantial denial of his rights under the United States or Illinois Constitutions or both. See 725 ILCS 5/122-1 *et seq*. (West 2012); *People v. Carter*, 2017 IL App (1st) 151297, ¶¶ 124-25.

¶ 44 At a third-stage evidentiary hearing, the circuit court, as factfinder, determines witness credibility, weighs testimony and evidence, and resolves evidentiary conflicts. *People v. Domagala*, 2013 IL 113688, ¶ 34. The court also determines whether the evidence demonstrates that a defendant is, in fact, entitled to postconviction relief. *Id.* At the evidentiary hearing, a defendant must show, by a preponderance of the evidence, a substantial violation of a constitutional right during his trial proceedings. *People v. Smith*, 2026 IL App (1st) 232404, ¶ 50.

"At the third stage, unlike the first and second stages, the allegations are not taken as true; instead, 'the trial court acts as a factfinder, making credibility determinations and weighing the evidence.' " *People v. House*, 2023 IL App (4th) 220891, ¶ 78 (quoting *People v. Reed*, 2020 IL 124940, ¶ 51).

¶ 45    A reviewing court considers the court's decision to deny relief following an evidentiary hearing for manifest error. See *Reed*, 2020 IL 124940, ¶ 51; see also *People v. Caldwell*, 2023 IL App (1st) 221586, ¶ 17 ("Where factfinding and credibility determinations are involved, we review the court's decision for manifest error."). Manifest error is plain and indisputable, or when the opposite conclusion is clearly evident. *People v. Coleman*, 2013 IL 113307, ¶ 98.

¶ 46    Defendant contends that his jury waiver was unknowing because counsel's advice to elect a bench trial was based upon counsel's best interest.

¶ 47    A defendant has the constitutional right to a jury trial. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. Our supreme court has held that a defendant's constitutional right to a jury trial "includes the right to waive a jury trial." *People v. Bannister*, 232 Ill. 2d 52, 65 (2008). The decision to waive a jury trial belongs to a defendant alone, not his counsel. See *People v. Robinson*, 2012 IL App (4th) 101048, ¶ 33. For a jury waiver to be valid, a defendant must understandingly waive his right to a jury trial in that the waiver is both knowing and voluntarily. *People v. West*, 2017 IL App (1st) 143632, ¶ 10. The validity of a jury waiver depends on the circumstances of a particular case. *People v. Bracey*, 213 Ill. 2d 265, 269 (2004). A court need not give "any set admonition or advice" for a jury waiver to be effective, and a jury waiver is generally valid where trial counsel makes it in the defendant's presence in open court and the defendant does not object. *Id*. at 270.

¶ 48    The record reflects that, prior to trial, the trial court admonished defendant that he was entitled to a bench trial or a jury trial and asked if he understood the difference. Defendant answered that he did. The trial court then asked whether defendant understood that the decision was his "alone." Defendant answered yes. The court also asked defendant whether counsel advised defendant on the "best way to proceed," and whether defendant decided what kind of trial he wanted after those discussions. Defendant answered yes, and that he "would prefer" a bench trial. Defendant denied that anyone forced, threatened, or promised him something to waive a jury trial.

¶ 49    At the evidentiary hearing, defendant testified that as trial approached, counsel "laid it out" that defendant could elect a bench or jury trial and explained a bench trial. Defendant asserted that, at that point, he was "leaning more" toward a jury trial. Defendant then testified that "right before trial," counsel presented a jury waiver and stated that counsel would not "go to a jury trial for what [James] still owes." Defendant did not think that trial counsel would proceed to a jury trial without payment. Counsel was hired to make the "decisions," so defendant elected a bench trial. However, during cross-examination, defendant testified, in turn, that he discussed the types of trials with counsel at the courthouse on the first day of trial, that counsel gave him "the options" in October 2010, and that counsel "set it up for a bench trial" at the "last" pretrial hearing.

¶ 50    Defendant acknowledged that, although counsel explained the types of trial, defendant did not remember whether counsel stated that the choice rested with defendant. Defendant did not think that counsel explained what would happen when defendant appeared before the trial court to discuss his choice of trial, and counsel did not tell defendant how to respond when the court questioned him about his choice. Defendant acknowledged that he did not question counsel's

decision or tell counsel that he wanted a jury trial. He also acknowledged that his 2012 letter to trial counsel did not allege that counsel declined to proceed to a jury trial without additional funds.

¶ 51    Trial counsel testified that he discussed trial options with defendant prior to trial. Counsel explained that, during a meeting when they watched defendant's videotaped statement, defendant said that it did not "look good" and counsel agreed. At this meeting, counsel and defendant discussed whether a judge or a jury would be "less forgiving" that defendant lied to the police. Counsel thought that a trial court "would give [defendant] a little bit of a safe harbor." At that point, defendant stated that he thought they should proceed to a bench trial, and counsel agreed. Counsel denied telling defendant that counsel could not proceed to a jury trial due to nonpayment of fees and asserted that he "[a]bsolutely" conducted jury trials with outstanding fees. Counsel denied discussing payment when defendant signed the jury waiver and did not remember payment being a "problem."

¶ 52    At the third stage, a defendant's postconviction allegations are not taken as true; rather, the circuit court, as factfinder, makes credibility determinations and weighs the evidence. *House*, 2023 IL App (4th) 220891, ¶ 78. Here, the circuit court noted that prior to trial, the trial court asked defendant whether he understood the difference between a jury and a bench trial and that the decision how to proceed rested with him, and whether he discussed how to proceed with counsel and received counsel's advice. The circuit court also noted the inconsistencies in defendant's testimony at the evidentiary hearing regarding the timing of the discussions regarding trial options. The court further found that defendant's testimony that he "went along" with trial counsel's advice because defendant hired counsel to make decisions and did not know what proceeding to a bench

trial meant conflicted with the transcript of the pretrial admonishments as well as with portions of defendant's testimony at the hearing.

¶ 53    Clearly, the circuit court rejected defendant's testimony but found credible trial counsel's testimony that defendant elected a bench trial after viewing defendant's videotaped statement and following a discussion as to whether a jury would "forgive" the fact that defendant lied to police. See *Domagala*, 2013 IL 113688, ¶ 34 (the circuit court, as factfinder, determines witness credibility and resolves evidentiary conflicts). The circuit court's denial of postconviction relief was not manifestly erroneous. See *Coleman*, 2013 IL 113307, ¶ 98 ("a decision is manifestly erroneous when the opposite conclusion is clearly evident").

¶ 54    Defendant further contends that he was denied effective assistance when, "just before" trial, trial counsel stated that counsel would not proceed to a jury trial absent additional funds, which caused defendant to choose a bench trial.

¶ 55    The parties disagree as to the standard of review. Defendant contends that we should apply a mixed standard of review, deferring to the circuit court's factual findings, but reviewing its ultimate ineffectiveness determination *de novo*. The State, on the other hand, argues that we review the circuit court's ruling for manifest error.

¶ 56    *People v. Smith*, 2026 IL App (1st) 232404, is instructive. In that case, in an appeal from the third-stage dismissal of an ineffective assistance claim, the defendant relied on *People v. Coleman*, 2015 IL App (4th) 131045, and *People v. Velasco*, 2018 IL App (1st) 161683, for the proposition that " 'the appellate court repeatedly has held that claims of ineffective assistance call for a hybrid standard of review.' " *Smith*, 2026 IL App (1st) 232404, ¶¶ 51-52 (quoting *Coleman*, 2015 IL App (4th) 131045, ¶ 66).

¶ 57     We noted that "our supreme court has consistently maintained that '[w]hen a petition is advanced to a third-stage, evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous.' " *Id.* ¶ 53 (quoting *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)). *De novo* review applies, however, when no new evidence is presented and the only issues are questions of law. *Id.* We explained that a reviewing court affords deference to the circuit court "when it has held an evidentiary hearing *** based on the understanding that the post-conviction trial judge is able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a position of advantage in a search for the truth which is infinitely superior to that of a tribunal where the sole guide is the printed record." (Internal quotation marks omitted.) *Id.* We therefore applied a manifestly erroneous standard of review to the denial of the defendant's ineffective assistance claims following a third-stage evidentiary hearing. *Id.* ¶ 54; see also *People v. McCoy*, 2026 IL 131565, ¶ 51 (reviewing the "decision to deny petitioner's actual innocence claim following the third-stage evidentiary hearing for manifest error, as the circuit court was in the best position to observe the witnesses and make credibility determinations").

¶ 58     Accordingly, we apply the manifestly erroneous standard of review to defendant's claim.

¶ 59     To succeed on an ineffective assistance claim, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). The failure to satisfy either prong is fatal to a defendant's claim. *People v. Yankaway*, 2025 IL 130207, ¶ 62.

¶ 60    At the evidentiary hearing, James testified that he paid trial counsel the agreed-upon $15,000 fee and believed that this amount included a jury trial. However, counsel then requested an additional $4,500 "close to trial." When James was unable to pay, trial counsel stated that "he could not go to a jury trial for that kind of money." During cross-examination, James acknowledged that his 2013 affidavit alleged that he fell behind on payments to trial counsel. However, James then testified that he never fell behind on payments to trial counsel, and that the contents of the affidavit did not make "sense" because trial counsel "got all of that money."

¶ 61    Defendant then testified that, "right before trial," trial counsel stated that he could not "go to a jury trial for what your brother still owes." Thereafter, when drafting his *pro se* postconviction petition, defendant told James what trial counsel said, and James replied that counsel told him "the same thing." Defendant then drafted James's affidavit "based" on defendant's conversation with trial counsel during which counsel stated that James had "fallen behind on payments."

¶ 62    Trial counsel, on the other hand, testified that James was "very good" about payments and denied telling James that an additional $4,500 was needed for a jury trial. He further denied telling defendant that he could not elect a jury trial due to nonpayment of fees and asserted that he "[a]bsolutely" proceeded to jury trials when he had not been fully paid. Trial counsel denied that payment played a role in his representation of defendant and asserted James made all payments.

¶ 63    Here, the circuit court expressly found incredible defendant's and James's testimony that trial counsel demanded additional funds to procced to a jury trial. See *House*, 2023 IL App (4th) 220891, ¶ 78 (at the evidentiary hearing, the circuit court, as factfinder, makes credibility determinations). The court noted that, although defendant's postconviction claim that trial counsel refused to proceed to a jury trial absent additional payment rested in part on James's 2013 affidavit,

James was "surprised" as to the affidavit's contents at the evidentiary hearing and that it was "clear" that James did not read the affidavit prior to signing it. In fact, James's testimony that trial counsel was paid in full and then requested additional funds contradicted the allegations in James's affidavit that counsel would not proceed to trial because James had fallen behind on payment. Moreover, defendant testified at the evidentiary hearing that he drafted the affidavit for James based upon a conversation between trial counsel and defendant.

¶ 64    Considering that James's testimony contradicted his affidavit, and that defendant acknowledged that the affidavit reflected a conversation between defendant and trial counsel, the circuit court's rejection of James's and defendant's testimony that trial counsel demanded additional funds to proceed to a jury trial as incredible was not against the manifest weight of the evidence. See *Coleman*, 2013 IL 113307, ¶ 98 ("a decision is manifestly erroneous when the opposite conclusion is clearly evident").

¶ 65    Before this court, defendant asserts that the circuit court erred in finding trial counsel's testimony credible and rejecting that of defendant and James. However, as discussed, when the circuit court holds an evidentiary hearing and makes credibility determinations, we reverse only if the court's decision was manifestly erroneous. See, *e.g.*, *People v. Carter*, 2021 IL App (4th) 180581, ¶ 68 (when a court acts as a factfinder, "perhaps the single most important thing the court can do is say whom it believes and whom it does not"; when the court provides such a finding, a reviewing court is "at the height of our deference to that court"). On this record, we do not find the circuit court's decision to accept trial counsel's testimony over that of defendant and James to be manifestly erroneous. *Smith*, 2026 IL App (1st) 232404, ¶ 53 ("the post-conviction trial judge is able to observe and hear the witnesses at the evidentiary hearing and, therefore, occupies a

position of advantage in a search for the truth which is infinitely superior to that of a tribunal where the sole guide is the printed record" (internal quotation marks omitted)). Having failed to establish that trial counsel requested additional funds to proceed to a jury trial, defendant cannot show that counsel acted objectively unreasonably, and his ineffective assistance claim therefore must fail. See *Yankaway*, 2025 IL 130207, ¶ 62.

¶ 66                                                III. CONCLUSION

¶ 67    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 68    Affirmed.